UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JOHN GOMES,<br>        Plaintiff,<br><br>        v.<br><br>BROWN UNIVERSITY,<br>        Defendant. | )<br>)<br>)<br>)<br>)     C.A. No. 23-cv-219-JJM-PAS<br>)<br>)<br>)<br>) |

ORDER

Plaintiff John Gomes worked as an administrative assistant at Defendant Brown University.  He alleges that Brown terminated him while he was on approved medical leave seeking treatment for mental health and addiction issues.  He filed this suit alleging a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") (Count I); violation of the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1 ("RIFEPA") (Count II) for unlawful discrimination based on his disabilities and retaliation; and a violation of the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 ("RICRA") (Count III) for engaging in unlawful discrimination based on Mr. Gomes' disabilities.  The Court denied Brown's motion to dismiss and after discovery closed, Brown moves for summary judgment on all three counts.  ECF No. 26.[1]

---

[1] Brown also filed a motion to strike Mr. Gomes' Statements of Disputed (ECF No. 31) and Undisputed Facts (ECF No. 30) as being out of compliance with the Federal Rules of Civil Procedure Rule 56.  ECF No. 36.  Because Brown's Motion to Strike relates to disputed and undisputed facts as Mr. Gomes presents them, the Court will address it first since a decision to strike would affect how it lays out the background facts.  Brown's position is that Mr. Gomes' responses to its Statement of

## I.   BACKGROUND

Mr. Gomes began working at Brown as an administrative assistant in April 2019.  In March 2021, Mr. Gomes disclosed to his supervisor Dianne Deignan that he was struggling with some mental health issues[2] but did not provide more detail than that.  ECF No. 27 ¶ 13.[3]  After a series of short, excused absences beginning on April 2, 2021, Mr. Gomes requested a leave of absence on April 16, 2021.[4]  *Id.* ¶¶ 14, 17, 22, 25.  Mr. Gomes never disclosed to anyone at Brown that: 1) he was in recovery for substance abuse; 2) he had relapsed; or 3) the reason for his absence from work was related to his relapse.  *Id.* ¶ 16.  On April 19, 2021, Samantha St. Onge, a Leave and Accommodation Specialist, emailed Mr. Gomes confirming his

---

Undisputed Facts and his own Statement of Disputed Fact do not comply with the rules.  The Court does not disagree but finds as a whole that they are acceptable so DENIES Brown's motion to strike them.  The Court notes, however, that equivocating and parsing language in these responses is largely unhelpful and rarely serves the party that chooses to present arguments instead of answers in their statements.

[2] Mr. Gomes had previously spoken with Diane Deignan about having mental health issues.  Two years earlier, Mr. Gomes asked Ms. Deignan for permission to leave work about 30 minutes early for two weeks so that he could attend an intensive outpatient program at Butler Hospital ("Butler") for a "mental health issue" without disclosing the specific issue or the nature of the treatment.  *Id.* ¶¶ 7-9.  Aside from asking to leave early and requesting an air purifier, from the beginning of his employment until March 2021, Mr. Gomes performed his job without the need for any accommodations.  *Id.* ¶ 11.

[3] For sake of efficiency, where the Court cites only to Brown's Statement of Undisputed Facts, ECF No. 27, Mr. Gomes' responses to these statements are in corresponding paragraphs in his Statement of Disputed Facts.  ECF No. 31.

[4] By the beginning of 2021, Mr. Gomes began abusing crystal methamphetamine.  *Id.* ¶ 2.  In early April 2021, Mr. Gomes had a health scare after using crystal methamphetamine that was laced with fentanyl, which prompted him to seek treatment.  *Id.* ¶ 14.

leave eligibility, asked him to submit a leave request through Workday[5] as soon as possible, and have his doctor complete the FMLA certification that she attached to the email within 15 days (May 4) and "fax [it] back to our secure fax at [number provided]." *Id.* ¶¶ 27, 28.

On April 23, he and his doctor completed the form at Butler Hospital, and he recalls having the completed document in hand. ECF No. 30 ¶ 49.[6] Butler would not fax employer forms, so he was instructed to mail it. *Id.* ¶ 50. Mr. Gomes emailed Director of Human Resources Tina Fogell stating that his doctor had completed the certification and that he would be mailing it to Brown. *Id.* ¶ 53. On April 26, he requested the proper mailing address and on April 28 was told to mail the form to "Brown University Attn: Leave Administrator, Box 1879, Providence, RI 02903."[7] *Id.* ¶¶ 51, 54, 55. He mailed the form. *Id.* ¶¶ 57-8.

Brown did not receive a completed FMLA certification by the May 4, 2021 deadline and so on May 6, 2021, Pamela Donnelly, Benefits Specialist, emailed Mr. Gomes to let him know that, provided another copy of the FMLA certification form, and instructed him that he had "seven days [May 13] to provide Brown with sufficient medical certification or your leave of absence will be closed . . . and will not

---

[5] Workday is a provider of software that helps businesses and organizations manage payroll, benefits, Human Resources, and employee data.

[6] For sake of efficiency, where the Court cites only to Mr. Gomes' Statement of Undisputed Facts, ECF No. 30, Brown's responses to these statements are in corresponding paragraphs in its Statement of Disputed Facts. ECF No. 35.

[7] This is not a correct zip code for Brown University. The correct zip code is 02912.

be designated as protected under the FMLA." ECF No. 27 ¶ 40.  Ms. Donnelly offered to help Mr. Gomes with the paperwork.  He did not respond to this email.

In a May 10, 2021 email, Ms. Deignan noted that he was expected to return to work days earlier and asked if he would be returning that day or extending the end date.  Ms. Deignan reminded Mr. Gomes that Brown's Leave and Accommodation team had not received a completed FMLA certification and it was due in three days. He stated that he did mail the form but acknowledged that the paperwork had not arrived[8] and promised to complete his FMLA paperwork "as soon as possible."  *Id.* ¶ 42.  He told Ms. Deignan that he expected to be out for another two to three weeks; she responded by wishing him well.  She also suggested that he take a photo of the form and email it.  *Id.* ¶¶ 42, 44.  At the same time, Mr. Gomes was also emailing with Ms. Fogell about the missing FMLA certification; he told her that he had mailed the forms "weeks ago" but would have his doctor fill out and mail another form as soon as possible.  *Id.* ¶ 43. The next day, Ms. Deignan emailed him that she let Ms. St Onge know he mailed the paperwork and extended his end date and asked him to update Workday to reflect the new end date.  ECF No. 30 ¶ 62.

On May 12, 2021, Ms. St Onge emailed Mr. Gomes that Brown had yet to receive the FMLA certification and asked him for clarification of when he mailed it. He did not respond, but emailed Ms. Deignan the next day attaching a note from his

---

[8] Mr. Gomes testified that it could be that he learned this information from Ms. Donnelly's May 6th email to which he did not respond.

physician's assistant Amy Snyder[9] stating that he is out for "medical reasons" since April 1, 2021 and likely able to return the week of June 1.  Ms. Deignan forwarded the note to the Leave and Accommodations team.  All communication between Mr. Gomes and Brown personnel from early April 2021 through the end of May 2021 was done through Brown University email.

Between May 14, 2021 and May 24, 2021, Mr. Gomes failed to respond to repeated communications from Brown concerning the status of his FMLA certification.[10]  ECF No. 27 ¶¶ 50, 52, 53.  In a May 17, 2021 email, Ms. Fogell told him again that Brown did not receive the form and offered "with your permission, to reach out to your physician if there is an issue with submitting the form."  *Id.* ¶ 50. He did not respond.  A week later, Brown informed Mr. Gomes that his leave was unapproved because it had not received a completed FMLA certification.  *Id.* ¶ 53. He did not respond.  Three days later, Brown emailed him that his employment would be terminated the next day for job abandonment if he did not respond in some way about his intentions.  *Id.* ¶¶ 53, 55.  Brown did not terminate him the next day but sent a final email on June 1, 2021 terminating him for job abandonment after not hearing from him for more than 10 days.  *Id.* ¶ 56.  When Brown sent its termination email on June 1, he responded from his personal email account within four minutes.

---

[9] Mr. Gomes testified that Amy Snyder could have completed the form, but he did not ask her to do it.

[10] Brown did not know why he stopped communicating but learned Mr. Gomes had relapsed and that he was discharged from the intensive outpatient program. ECF No. 27 ¶ 51.  Mr. Gomes testified that he did not see any of these emails and had he seen the communications from May 17 through May 27, 2021, he would have responded and acted promptly.  ECF No. 30 ¶ 68.

ECF No. 30 ¶ 75.  Brown never attempted to contact him by phone before terminating his employment.  *Id.* ¶¶ 67, 78.  Mr. Gomes appealed his termination but failed in those efforts.  He then sued Brown.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "A genuine dispute is one which 'a reasonable jury could resolve … in the favor of the non-moving party,' and a material issue is one with the 'potential to affect the outcome … under the applicable law.'"  *Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 108 (1st Cir. 2024) (alterations in original) (quoting *Cherkaoui v. City of Quincy*, 877 F.3d 14, 23-24 (1st Cir. 2017)).   In determining whether to grant summary judgment, a court must construe "the facts in the light most favorable to the non-moving party" and "draw[ ] all reasonable inferences" in its favor.  *Id.* (quoting *Harley-Davidson Credit Corp. v. Galvin*, 807 F.3d 407, 408 (1st Cir. 2015)).  "When it comes to evaluating summary judgment motions, judges simply aren't meant to be factfinders. In what should come as a surprise to no one, then, courts should never be in the business of granting such motions when the case's material facts are genuinely disputed by the parties."  *Rivera-Rivera v. Medina & Medina, Inc.*, No. 17-1191, 898 F.3d 77, 84, 2018 WL 3640821, at *1 (1st Cir. Aug. 1, 2018).  However, "while courts should apply the controlling standards carefully in all cases—and especially in cases that present difficult issues of proof—summary judgment can be appropriately entered even where

elusive concepts such as motive or intent are involved." *Mesnick v. Gen. Elec. Co,* 950 F.2d 816, 822 (1st Cir. 1991).

## III.   DISCUSSION

The Court will begin its discussion of Mr. Gomes' FMLA claim as that analysis overlaps with the other claims.

### A.    FMLA Disability Discrimination

The purpose of the FMLA is to "entitle employees to take reasonable leave for medical reasons" "in a manner that accommodates the legitimate interests of employers."   29 U.S.C. § 2601(b)(2)-(3).   "It is a 'familiar canon of statutory construction that remedial legislation,'" such as the FMLA, "should be construed broadly to effectuate its purposes.'" *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 164 (1st Cir. 1998) (quoting *Tcherepnin v. Knight,* 389 U.S. 332, 336 (1967)).   The FMLA prohibits both interference and retaliation and Mr. Gomes argues that Brown is liable for both.

#### 1.  Interference

Brown argues that Mr. Gomes' interference claim fails because it is undisputed that he did not submit the statutorily required FMLA certification form – not within the 15-day deadline, the expanded deadline that Brown allowed, or at all.  Mr. Gomes testified that he and his doctor completed and mailed the form, but it did not arrive because Brown gave him the incorrect zip code.  When Brown told him it did not receive the form, he promised to send a new one in as soon as possible.  He argues

that Brown terminated him before he could do so thereby interfering with his right to take FMLA leave.

"To prove a prima facie case for interference, a plaintiff must show that: 1) she was an eligible employee under the statutes; 2) she worked for the employer; 3) she was entitled to FMLA leave; 4) she gave adequate notice to the employer of her intention to take leave; 5) the employer denied her the benefits of the leave." *Galvin-Assanti v. Atl. Props. Mgmt. Corp.*, 483 F. Supp. 3d 125, 139 (D.R.I. 2020). "The key issue is simply whether the employer provided its employee the benefits to which she was entitled per the FMLA." *Carrero-Ojeda v. Autoridad de Energia Electrica*, 755 F.3d 711, 722 (1st Cir. 2014) (citing *Hodgens*, 144 F.3d at 159).

To determine whether an employee is eligible for FMLA benefits, an employer can require an employee to submit a medical certification in support of his request for FMLA leave. *See* 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a).[11]  If an employer

---

[11] The regulation that governs this part of the FMLA process states that "[a]n employer may require that an employee's leave … due to the employee's own serious health condition … be supported by a certification issued by the health care provider of the employee …. * * *  An employer must give notice of a requirement for certification each time a certification is required; such notice must be written notice …."  29 C.F.R. § 825.305 (a).  As for the timing of the request for certification, the regulation states that "the employer should request that an employee furnish certification at the time the employee gives notice of the need for leave or within five business days thereafter, or, in the case of unforeseen leave, within five business days after the leave commences. * * *  The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." 29 C.F.R. § 825.305 (b).  "A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification." 29 C.F.R. § 825.305 (c).  "If the employee fails to provide the employer with a complete and sufficient certification, despite the

requests a medical certification, failure to submit such certification renders the employee's absences unprotected by the FMLA. *See Galvin-Assanti*, 483 F. Supp. 3d at 139; *Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788, 793 (1st Cir. 2011). Brown reads Mr. Gomes' failure to supply the form as a strict failure to comply with the regulation giving it license to find that his absences were not covered by the FMLA and thus amounted to job abandonment.

The regulations, however, highlight the flexibility that comes with a remedial statute. Mr. Gomes argues that the regulation's practicability exception applies here to create a dispute of material fact. That section states: "The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, *unless it is not practicable under the particular circumstances* to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification." 29 C.F.R. § 825.305 (b) (emphasis added). He argues that the record supporting his diligent, good faith efforts to comply, including that he submitted notes from his medical provider to Brown stating that he needed to be out of work for medical reasons and mailed the certification form, is disputed such that summary judgment should not enter.

---

opportunity to cure the certification as provided in paragraph (c) of this section, or fails to provide any certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313. It is the employee's responsibility either to furnish a complete and sufficient certification or to furnish the health care provider providing the certification with any necessary authorization from the employee or the employee's family member in order for the health care provider to release a complete and sufficient certification to the employer to support the employee's FMLA request." 29 C.F.R. § 825.305 (d).

While the record does show that Brown tried to work with him to get a completed form, offering him extensions and other help, Mr. Gomes will testify that he acted in good faith because he mailed the form to the address Brown provided to him.  A jury could also find that that was so because when Brown told him they had not received the form, he promised to have his medical provider send in another form "as soon as possible."  A jury could find that terminating him on June 1, 2021 after he promised to mail another form "as soon as possible" interfered with his ability to take a leave for which he was eligible.  A jury could also find that Brown should have extended any deadline to submit the form (as it had done before) in the face of Mr. Gomes' professed compliance and promise to mail another form as soon as possible while suffering with a medical condition requiring him to be out of work.

Mr. Gomes also testified and argues here that he believed he was out on approved leave as of May 11, 2021.  In an email exchange where he asked to extend his leave, Ms. Deignan informed Mr. Gomes that she had let Ms. St. Onge know that he mailed the paperwork, and that his end date was being extended for another two to three weeks.  ECF No. 30 ¶ 62.  Two days later, after Mr. Gomes submitted a medical note extending his leave through the week of June 1, 2021, and expressing that he will likely be able to return with no restrictions by then, Ms. Deignan responded: "Thanks John. I'll provide UHR with your revised return from LOA note." *Id.* ¶ 65.  He argues that this exchange raises a dispute from which a reasonable juror could find that he reasonably believed that his leave was approved.  Moreover, a jury could find that his belief that he had time to send in another form because his leave

10

was approved was reasonable under the circumstances.  Therefore, the Court finds that material facts underlying Mr. Gomes' FMLA interference claim exist such that it cannot decide this issue as a matter of law.

### 2.  Retaliation

Now the Court moves to Mr. Gomes' claim for FMLA retaliation.  The *McDonnell Douglas* burden-shifting framework "applies to claims that an employee was discriminated against for availing himself of FMLA-protected rights." *Hodgens*, 144 F.3d at 160.  To make out a prima facie case of retaliation, a plaintiff must show that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action." *Id.* at 161.  The prima facie burden is "quite easy to meet." *Villanueva v. Wellesley Coll.*, 930 F.2d 124, 127 (1st Cir. 1991).  If the Court concludes that it is met, the burden shifts to the defendant who then must "articulate a legitimate, non-retaliatory reason for the adverse action." *Lopera v. Compass Grp. USA, Inc.*, 578 F. Supp. 3d 130, 136 (D. Mass. 2021).  If that occurs, then the plaintiff is "tasked with demonstrating that there is sufficient evidence for a reasonable juror to find that the stated reason is a pretext for retaliation." *Id.*

Brown concedes the first two elements of the prima facie case for the purposes of summary judgment; as to causation, Brown argues there is none because "the discharge here was expressly for taking improper leave—not for filing a leave request—and no rational jury could find that the asserted and adequate reason given

11

was pretextual." *Tayag*, 632 F.3d at 793. Mr. Gomes relies on the temporal proximity between his request for and pursuit of leave and his termination. Less than sixty days, he argues is close enough to infer a retaliatory motive. And the Court concludes that it is enough here to meet the causation element of a prima facie case. Shifting the burden to Brown, the Court finds Brown's reason for terminating him, "job abandonment" is legitimate because Brown did not hear from Mr. Gomes for over two weeks after corresponding through his Brown University work email fairly regularly for a month and warned him that, if he did not respond, he would be terminated for that very reason.

Now Mr. Gomes must produce evidence from which a reasonable jury could conclude that Brown actually fired him for seeking FMLA leave, rather than for being absent from work without filing the compliance form. The Court considers Mr. Gomes' evidence as a whole. *See Hodgens*, 144 F.3d at 170. Mr. Gomes relies on his belief that Ms. Deignan approved his leave and was communicating with Human Resources and Leave and Accommodations staff; his termination while out on approved leave shows that Brown ignored the fact that Ms. Deignan approved his leave. As other evidence of pretext, he argues that Brown deviated from its leave policy because his supervisor should have initiated his leave request due to his medical emergency, that Brown's communication process was confusing and unfair because it used his work email even though it knew he had no access to a computer, and he did not abandon his job so the reason for his discharge is in dispute. He also

12

relies on the temporal proximity between his request for leave and his termination which occurred less than two months later as evidence of retaliation.

The Court finds that Mr. Gomes has not produced any dispute as to Brown's retaliatory intent to demonstrate that its decision to fire him was pretext and that Brown really fired him because he wanted to take an FMLA leave. Applying the law to the undisputed facts of this case, Mr. Gomes' evidence could not convince a rational jury that he was fired for requesting FMLA leave rather than for being out of work on unapproved leave because he did not file the required certification. There is no disputed evidence of a connection between his request for leave – which is undisputed that Brown was supportive of – and his termination two months later. Brown advised him of his eligibility to take FMLA leave, ECF No. 27 ¶¶ 27, 28, 40, 50, 52, 53, 55, 56; provided him well over the required 15-day period to submit a medical certification, *id.*; consistently tried to help Mr. Gomes with getting his FMLA certification over a nearly two-month period, including granting him numerous extensions without him even asking; repeatedly asking him to reach out with any questions; repeatedly offering Mr. Gomes suggestions on how to transmit the completed FMLA certification form; sending him numerous emails inquiring about the status of his FMLA certification; offering to directly communicate with his provider to obtain the form; and sending him a last chance email to respond in some way about his status to avoid termination, *id.* ¶¶ 27, 28, 35, 39, 40, 42, 44, 45, 50, 52, 53, 55, 56; only terminated his employment after he failed to respond to multiple attempts at outreach. *Id.* ¶¶ 27, 28, 40, 50, 52, 53, 55, 56.

13

There is no evidence that Brown knew Mr. Gomes was having a medical emergency such that his supervisor should have initiated his leave – and the record is clear that Mr. Gomes did initiate his own leave request in Workday. It is also undisputed that all communication between Brown personnel and Mr. Gomes from when he initially asked for leave until he stopped communicating was done using Brown email addresses and Mr. Gomes never said that using that email was an issue for him. It was a worsening of his medical condition, not a communication method, that led to his difficulties in communicating with Brown – a medical condition the extent of which he admits no one at Brown knew.

Moreover, it is undisputed that Ms. Deignan was supportive of Mr. Gomes taking FMLA leave; not only did she provide him with all the information he needed to apply for the leave, but she was kind, supportive, and encouraging in her communication with him.[12] Brown's "obvious willingness to provide [Mr. Gomes] with FMLA leave is hard to reconcile with the asserted retaliation." *Brookins v. Staples Cont. & Com., Inc.*, No. 11-CV-11067-RWZ, 2013 WL 500874, at *7 (D. Mass. Feb. 12, 2013). And, Mr. Gomes has not put forth any evidence that anyone at Brown made negative comments about his health issues or his need to take either the earlier intermittent medical leave or about his request to take FMLA leave here. *Id.* (summary judgment on pretext where there is no evidence of discriminatory remarks

---

[12] Ms. Deignan also was supportive of Mr. Gomes' previous intermittent leave, allowing him to leave work early to attend an outpatient program until his condition required more full-time care, making it even more unlikely that a jury would find Brown chose to retaliate against Mr. Gomes for the leave at issue here.

14

about requested leave).  Finally, Mr. Gomes' reliance on temporal proximity alone to raise a dispute on pretext is insufficient when it is the only factor especially where the surrounding circumstances show otherwise.  *Stratton v. Bentley Univ.*, 113 F.4th 25, 49 (1st Cir. 2024).  Therefore, the Court finds that Brown is entitled to summary judgment on Mr. Gomes' FMLA retaliation claim.

### B.    RIFEPA AND RICRA

Mr. Gomes argues that Brown discriminated against him based on his disability in violation of the RIFEPA and the RICRA by failing to accommodate his disability and retaliating against him by terminating him.[13]  He counters Brown's motion for summary judgment on these two counts with disputed facts on his failure to accommodate disability discrimination and retaliation.

#### 1.    *Disability Discrimination – Failure to Accommodate*

"A prima facie case of disability discrimination requires the plaintiff to show that (1) she was disabled within the meaning of the ADA, (2) she was a 'qualified individual,' and (3) the defendant took an adverse employment action against her on the basis of her disability." *Pena v. Honeywell Int'l, Inc.*, 923 F.3d 18, 27 (1st Cir. 2019).  "To establish a claim for failure to accommodate, a plaintiff must produce sufficient evidence for a reasonable jury to find that (1) she was disabled within the meaning of the ADA, (2) she was a qualified individual, and (3) the defendant,

---

[13] The Court's analysis of these two statutory disability claims falls under a single analytical framework derived from caselaw based on the Americans with Disability Act ("ADA").  *See Kriegel v. State of R.I., Dep't of Corr.*, 266 F. Supp. 2d 288, 296 (D.R.I 2003) (when disability claims are made under both federal and state law, the court's analysis is under the corresponding federal ADA statute).

despite knowing of her disability, 'did not reasonably accommodate it.'" *Id.* at 31 (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 107 (1st Cir. 2005)). As discussed above, once a prima facie case is confirmed, the Court turns to the legitimacy of Brown's adverse employment action and whether the given reason for taking adverse employment action against Mr. Gomes was a pretext for disability-based discrimination.

It appears to be undisputed that Mr. Gomes meets the first two elements of the prima facie case for failure to accommodate. As to whether it knew of Mr. Gomes' disability and failed to accommodate it, Brown argues three things: 1) Mr. Gomes never specifically asked for an accommodation in the form of FMLA leave; 2) other than Mr. Gomes telling his supervisor that he was dealing with some mental health issues, he never revealed even the most basic details of his disability so Brown could not have discriminated against him for or failed to accommodate a condition it knew little about and 3) the record evidence is undisputed, and Mr. Gomes does not dispute, that Ms. Deignan and other Brown personnel were always supportive, kind, and understanding in how they treated Mr. Gomes throughout this process so there is no evidence of discriminatory animus.[14]

---

Brown also argues the termination decisionmakers, Ms. Light and Ms. Hospedales, did not know about his disability. They knew he sought FMLA leave, but they both testified that they knew nothing about his medical condition and there was no information about his condition in the doctor's notes he did provide. They saw the note from Butler Hospital, presumably alerting them to his mental health-related issues, after they terminated him on June 1. Also, his supervisor did not know he was being fired until after the decision was made and delivered. So, Brown argues that not only are there no disputed facts as to discriminatory animus, but there is also no evidence of it at all.

16

The main issue here is whether Mr. Gomes asked for a reasonable accommodation.[15]   The plaintiff has the burden of showing that he "sufficiently requested the accommodation in question."  *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 260 (1st Cir. 2001).  The employee's request (1) "must be 'sufficiently direct and specific,'" and (2) "must explain how the accommodation requested is linked to some disability."  *Id.* at 261 (quoting *Wynne v. Tufts Univ.*, 976 F.2d 791, 795 (1st Cir. 1992)).  Mr. Gomes argues that the First Circuit has held that requesting an FMLA medical leave is a request for a reasonable accommodation.  *See Criado v. IBM Corp.*, 145 F.3d 437, 443–44 (1st Cir. 1998).  Brown counters that it was not, and the First Circuit has not definitively ruled as much in FMLA cases.

Even if the law was clear as applied to facts of this case that an FMLA leave request can be considered a request for a reasonable accommodation,[16] there is no

---

[15] Mr. Gomes says it is the law of the case that his request for leave is a request for a reasonable accommodation, citing the Court's decision on the motion to dismiss. In his complaint, Mr. Gomes alleged that he requested both a medical leave and FMLA leave – two separate requests.  On the motion to dismiss, the Court noted those two requests.  And Mr. Gomes responded that courts recognize a request for a general medical leave of absence (*unrelated to FMLA leave*) as a request for a reasonable accommodation under RIFEPA.  It is now clear from the record that, while he had asked for intermittent time off to attend counseling before the events leading him to request FMLA leave, he did not make a general medical leave request related to the time at issue here.

[16] The Court disagrees that it is settled in the First Circuit that a request for leave under the FMLA is a request for a reasonable accommodation under RIFEPA and RICRA.  Mr. Gomes cites *Criado*, which states in dicta that "[a] leave of absence and leave extensions are reasonable accommodations *in some circumstances*."  145 F.3d at 443 (emphasis added).  *Criado* was an ADA case that dealt only with a general medical leave as an accommodation under the ADA, not an FMLA leave of absence, so the First Circuit did not make any definitive findings on this issue.

17

dispute that Mr. Gomes did not couch his request for FMLA medical leave as a request for a reasonable accommodation and did not explain how that accommodation was linked to his disability. First, other than vaguely referencing mental health struggles and having "things he needs to take care of," Mr. Gomes admits that he told no one at Brown about the extent of his anxiety and depression, his drug addiction, or that he needed the leave to receive outpatient treatment for it. An employer cannot be faulted for failing to provide a reasonable accommodation for a serious medical condition when it does not know what it is being asked to accommodate. *See Stratton*, 113 F.4th at 53 (where plaintiff made "vague assertion that her workload had 'negative effects on her health'" not linked to a disability, employer had "no duty to divine the need for a special accommodation"); *see also Estades–Negroni*, 377 F.3d at 64 (rejecting failure to accommodate claim where plaintiff asked for a reduced workload without expressly tying the request to her depression).

For the purposes of this motion, however, the Court will assume that Mr. Gomes makes out a prima facie case. Moving through the *McDonnell Douglas* analysis, the Court has found that Brown stated a legitimate, non-discriminatory reason for terminating his employment.

Next, the Court considers whether that reason is pretext and whether Brown's failure to accommodate Mr. Gomes was discriminatory. The Court's focus "must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 113 (1st Cir. 2024) (quoting *Vélez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 452 (1st Cir.

18

2009)).   It is "not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real and unlawful motive of discrimination." *Brader v. Biogen Inc.*, 983 F.3d 39, 55 (1st Cir. 2020) (alteration omitted) (quoting *Vélez*, 585 F.3d at 452). Further, "a false justification is no sham at all unless the employer knows it to be false." *Joseph v. Lincare, Inc.*, 989 F.3d 147, 160 (1st Cir. 2021).

As evidence of a dispute on pretext, Mr. Gomes highlights his view of the internal inconsistency between Ms. Deignan's approval of his leave and other Brown personnel telling him his leave was not approved.  Mr. Gomes argues that Brown knew he had a serious health condition but cannot point to any specific evidence that he gave them any details about it.  He acknowledges that he told no one at Brown about his drug use and relapse.  To overcome his hurdle of pointing to disputes over proving intent, he argues a cat's paw theory – that those who terminated him need not have discriminatory animus if a supervisor with discriminatory animus influences a termination.  At the same time, he concedes that his supervisor was completely supportive of his eligibility for leave and did not know he was being terminated until after the decision was delivered.  The Court finds there is no evidence of discriminatory motive or a cover-up.

Mr. Gomes also relies on the inference drawn from the timing of his disclosure of his disability to his termination as creating a dispute such that a jury could find that Brown refused to accommodate him and terminated his employment because of

19

his disability. He notes that the date he was fired was the date he was set to return on the doctor's note he submitted. But "chronological proximity does not by itself establish causality, particularly if '[t]he larger picture undercuts any claim of causation.'" *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) (citation omitted); *Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) (affirming summary judgment in a Title VII retaliation case on failure to establish causation because "a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action").

Timing is not on Mr. Gomes' side here. The undisputed evidence shows that Brown made sustained efforts to help Mr. Gomes to obtain his FMLA certification over the nearly two-month period, warned him that he could be terminated if he did not comply, before ultimately terminating his employment for job abandonment when he stopped responding to Brown's emails. "Where the adverse conduct also closely follows the employer's stated justification, temporal proximity 'weighs as strongly for [the] asserted legitimate reason as it does for pretext.'" *Kearney v. Centrus Premier Home Care, Inc.*, No. CV 14-10073-DJC, 2015 WL 6757531, at *5 (D. Mass. Nov. 5, 2015) (quoting *Brookins*, 2013 WL 500874, at *6).

Moreover, the emails between Mr. Gomes and Brown personnel exchanged between April 16, 2021 and May 14, 2021 undisputedly display Brown's willingness to help Mr. Gomes complete the FMLA leave certification process; no one ever tells him that he needs to come back to work despite his disability (or his inadequate paperwork), or communicates to him in any way that his disability or his time away

20

from the office was inconvenient or creating problems. And Mr. Gomes does not testify that he felt discriminatory animus from anyone at Brown. Because nothing in the record suggests that Ms. Deignan or any other Brown employees who dealt with Mr. Gomes harbored any discriminatory animus toward him, there is nothing that could convince a reasonable jury that Brown discriminated against him by failing to accommodate his disability under RIFEPA or RICRA.

### 2.    Retaliation

"The antiretaliation provisions of RIFEPA, RICRA, and Title VII make it unlawful 'for an employer to discriminate against any of [its] employees ... because [she] has opposed any practice made an unlawful employment practice by [Title VII].'" *McElroy v. Fid. Invs. Institutional Servs. Co., Inc.*, 298 F. Supp. 3d 357, 366 (D.R.I. 2018) (quoting 42 U.S.C. § 2000e–3(a)); *Collazo v. Bristol–Myers Squibb Mfg., Inc.*, 617 F.3d 39, 46–50 (1st Cir. 2010). Because Mr. Gomes' retaliation claim is based on circumstantial evidence, the *McDonnell Douglas* burden-shifting analysis as articulated previously applies. *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 133 (1st Cir. 2017). To prevail on a retaliation claim under RIFEPA or RICRA, Mr. Gomes must first establish that: 1) he engaged in protected conduct; 2) he experienced an adverse employment action; and 3) there was a causal connection between the protected conduct and the adverse employment action. *See* R.I. Gen. Laws § 28-5-7(5); *Shoucair v. Brown Univ.*, 917 A.2d 418, 427 (R.I. 2007)); *Carroll v. Xerox Corp.*, 294 F.3d 231, 237–38 (1st Cir. 2002). Once the prima facie case is met, the burden shifts to Brown to show a legitimate, non-retaliatory reason for terminating

21

Mr. Gomes.  Once that happens, Mr. Gomes must show that the stated reason was pretext for retaliation.

Just as in its analysis of his FMLA retaliation claim, the Court presumes for the sake of this motion that Mr. Gomes clears the prima facie case hurdle and that Brown's reasons for terminating him are legitimate.  And just as in its previous analysis, the Court finds no evidence on which a reasonable jury could conclude there is causation.  Mr. Gomes relies on temporal proximity, Brown's characterization of his leave as "job abandonment," rigid demands for paperwork, and termination while he was hospitalized[17] as pretextual and therefore evidence of retaliation.  The evidence in the record shows that Brown's use of the term job abandonment was justified since Brown told him early in the process on May 6, 2021 that his leave would not be authorized without the form and told him in several emails and letters before terminating him that he was in danger of being terminated if Brown did not hear from him.  While the demands for paperwork were inconvenient for Mr. Gomes while he was going through treatment, Brown was consistent in enforcing its policies, and FMLA regulations permitted such requirements.

Other than the two months proximity between his request for leave and his termination, there is simply no evidence that Brown terminated him in retaliation under RIFEPA and RICRA for asking for that leave.  Temporal proximity can meet the prima facie causation element of retaliation, but "it 'does not[, standing alone,]

---

[17] There is no dispute that Mr. Gomes was not admitted to the hospital for inpatient care related to his disability during this period but received treatment on an outpatient basis.  ECF No. 27 ¶¶ 21, 32.

satisfy [plaintiff's] ultimate burden to establish that the true explanation for [his] firing was retaliation for engaging in protected conduct rather than' the reasons articulated" by Brown. *Echevarria*, 856 F.3d at 138 (quoting *Carreras v. Sajo, García & Partners*, 596 F.3d 25, 38 (1st Cir. 2010)). Thus, the Court grants Brown's motion for summary judgment on Mr. Gomes' RICRA and RIFEPA retaliation claim.

## IV. CONCLUSION

There are disputed issues of fact regarding Mr. Gomes' FMLA interference claim so the Court should leave the determination of that claim to a jury. Thus, the Court DENIES Brown's Motion for Summary Judgment as to that part of Count I. There are no disputed material facts, however, supporting Mr. Gomes' claims for discrimination and retaliation based on protected status and conduct on which a jury could find in his favor. The Court GRANTS Brown's Motion for Summary Judgment as to Mr. Gomes' FMLA retaliation claim in Count I and as to his claims under RIFEPA and RICRA in Counts II and III. ECF No. 26. The Court DENIES Brown's Motion to Strike. ECF No. 36.

IT IS SO ORDERED.

_____
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

May 4, 2026

23